argument of today. Case number 20 for us anyway. Case number 22-30153 Collins versus Ingle and we'll begin with Ms Mata. Good morning, Your Honor's please the court. My name is Vanessa Mode and I represent the appellants to Waylon Collins. Mr Alvin Polk. Part of the responsibility of a district judge is to be the gatekeeper of admissible and irrelevant exhibits. In this case, this is to help the jury to be prohibited from confusion, prejudice into fact finding mission. Because my time is limited, I will focus on four major points. The district court aired in denying plaintiffs 12 F motion, allowing a retired insurance adjuster to testify about red flags. Evidentiary rulings regarding a guilty plea citation being excluded and denying plaintiffs motion post trial relief regarding the damages as well as I'm not amending the liability. Plaintiffs 12 F motion should have been granted. Defendants originally claimed defendants plead the affirmative defense of conspiracy to commit fraud and that the alleged subject accident in this case was intentionally caused and or magistrate judge did deny, stating that it did not meet the heightened pleading requirements under nine B. Thereafter, defendants changed one word. Defendants plead the affirmative defense that plaintiffs conspired to state to stage the alleged subject accident and that the alleged subject accident in this case was intentionally caused and or staged. The question is, is removing the word fraud lower the heightened standards under nine B? The answer is no. And here is why the district court failed to address the difference between staging and fraud. In fact, when denying the 12 F motion, all there was in a dispute about was the word intentional. I'm not here to state that anything that's intentional needs a nine B pleading, but there were two elements in there that was aging twice. Now, because this is a highly factual issue, I had to turn to another district court that had the same exact issues. We look at Hernandez versus Van Veen, which is the Nevada district court case. The defendants argued the same allegations here, stating that staging of an accident is not the same as fraud. The district court rejected that argument and stated that it was synonymous and indistinguishable, and it needed to have the height in nine B pleading requirements. Let me ask you why staging of an accident is not fraud. Well, Your Honor, that's the whole point. I believe one of the reasons why we're here, because where is the parallel difference? If we imagine a U. S. Attorney files an indictment and says, excuse me, John Doe, you are. We're charging you with conspiracy of fraud, and he stands up and says, No, I'm sorry. I staged an accident. I did not commit any fraud. Better luck next time. We don't shake our heads and laugh. Say no, that that's identical to me. And maybe I'm just misunderstanding to me that staging is faking it in essence, whereas intentional is I'm driving down the street and instead of somebody, you know, looking at their radio and running into me, they look at me and say, I want to run into you and run into me. That's intentional. That's an actual accident. It's not a staged accident. It's actual versus kind of saying there was an accident when there wasn't in that what staging is in this in this first in this case, that's not what they were saying. No one disputed that a collision did occur. They say we're saying that the two parties agreed to do it, which they needed to provide evidence, which goes into my conspiracy element. There was they're saying the staging was, but then that's kind of staging is is intentional to me. I mean, to me, staging when you're saying it's fake, which I didn't understand how this could be fake is like you say, there was an actual, uh, accident. Um, but how can if you plan to run into each other? Why isn't that just intentional? And the point of that was is that it wasn't just the plan. It was the fact that they had. They said it was a conspiracy. See, the element of conspiracy is an unlawful act. It's when two or more come to an agreement to have a criminal activity. And that's where we set the standard that no one everyone has evaded that issue to show that this is a criminal issue. If you look at indictments that have talked about a staging, they alluded to fraud. It's synonymous. It's you are defrauding an insurance company, and that is where the difference is. The staging is the act of the accident. But was there a claim that angle and Collins were conspiring to make this happen? Because it would not seem to be what the defendants would raise. So that's why I don't understand the staging argument really at all. Well, and that's kind of why I'm here. Your honor. I know angle was a defendant driver and going into how could it be staged without angle being part of it? That's what I exactly honor because then it's just intentional. If one side so two sides agree, we'll kind of hit our cars together a little. We'll fake it, and then we'll act like we got injured and we'll make a bunch of money. That's separate from intentional. Somebody's just driving down the road and someone else just rams into them because they're mad at him for some reason. Right, your honor. And and I guess it goes to the point as to what is the intent in the wording behind this. So when we go into that section of the conspiracy, we look into what was the intent of those words, which is that unlawful criminal act. And when we look at what staging a motor vehicle collision is, we actually look at the case of Dorsey versus portfolio, which says that we should apply state court. I'm sorry. What court that was for this court, your honor, for the Fifth Circuit here, and I believe it's 2000 to memory serves me state law, fraud and affirmative defense's premise on fraud are subject to a heightened pleading. Well, as this is again a very sensitive and highly factual issue, there is now and I provided his first exhibit. It's a revised statute that the Louisiana Legislature has now defined what staging a motor vehicle collision is. And it says in the beginning, a staging of a motor vehicle collision is any of the following with an intent to defraud. And that's the whole point is that, yes, intentional doesn't always need those heightened requirements. But when we're talking about staging a collision, it's got the intent to defraud. Okay, let me ask you this. A good bit of the defendant's responses to your arguments is harmless error. What do you have to say about that? Given that the jury did find that Ingle caused the accident, your honor, my last thing was gonna be on liability, but I will jump to that answer right away. It was highly prejudicial to have solely an attorney's argument and to have someone here as an expert to so called expert give inadmissible and prejudicial testimony. If we look at the actual evidence of the case, and this is where you see there was highly prejudicial. You have one. The jury question that was asked was based solely on face testimony where they were asking for phone numbers of other people and asking for the slammers and then asking because Mr Faye inferred anything I was doing that was incorrect or invalid or illegal, asking for my phone number. That was highly prejudicial. But we look at the testimony of the defendant driver. The defendant driver stated he never saw the client's prior to the collision first and foremost. I don't understand how asking for a phone number is prejudicial. One of the sections of the argument of the testimony that Mr Faye provided was about how there were phone calls between parties and saying that they had similar accidents. And then those similar accidents was a part of my cases that I was representing these parties. And so he was trying to give this imaginary circle of criminal ring, so to speak, that we're all a part of the slammer ring, which is absolutely untruthful, unwarranted and should have never come to see the light of day in front of the jury. It had no probative value whatsoever, which is one of the issues that I argued was 403, which appellees did not go into that section about how there was no probative value in Mr Faye's testimony regarding that was extremely prejudicial. I'm sorry, I don't see how you've you've answered my question, which is the jury found Ingle caused the accident. So then how was it not harmless error? And I was psyched up there, but I'll go right back to it. The first thing was, is the testimony that Mr Ingle gave that stated that he did not see the plaintiffs. The second was, is their expert defendants hired an expert Dr Barada, who is highly qualified and is a biomechanic engineer and an accident reconstructionist. In his testimony, he was not told and not hired to give an opinion as to who was at fault. And I can understand why it wouldn't fit the narrative of what they were alleging. But what he did say is that my clients never changed lanes. My clients stayed in their lane. This is absolutely 100% showing that my clients did not intentionally caused an accident and did not stage a collision. But to go even further more into that, that doesn't exclude it speeding up, does it? I'm sorry, does not exclude the possibility that your client speeded up in order to cause the accident. Great point, Judge Jolley. And he did mention that there was a point where it didn't say speed up. He said he was going faster than the 18 wheeler, the commercial driver. However, in Louisiana state law, it says that when you are 32.79 as a statute, it now goes into the burden to show by the defendant to show that they changed lanes safely. And it's not only that, as a commercial truck driver, he's got a higher burden to show that in standard because he is an experienced driver. They failed to show that. Why? Because he did change lanes and he did hit my clients. That is the whole reason why, that that should not have shown that there was anything. So are you saying that someone who changes the lane, that the person that they hit, that person can never have contributed to the accident by their conduct? Oh, I'm okay. So then isn't that a fact question? I mean, in other words, there is some indication he was driving faster. Your client, Mr Collins, was driving faster. And so when the person is changing lanes, they're predicting something that was not correct. And so he ended up hitting him. I've had plenty of people try to come in front of me and I stop. So that doesn't mean they should have done that. But there was something for me to do to try to prevent the accident. Try not to speed, try not to this, try not to that. That's not to say I won't get hit, not to say that I wouldn't sue him if they hit me. But I'm just trying to say that's the whole fact interaction that doesn't seem to have anything to do with the claim of staging. So the jury finding, well, you both contributed to this. And Engel never said he was part of some staged group or anything like that. So it's not that he's claiming to be the stager. So I don't understand really how that shows it was harmful error. Well, Your Honor, again, we're going to the point of believe it. Judge, all you had a case. Hidden Oaks versus City of Austin, where it says that absent of evidence to support the jury's verdict, comparative fault was manifestly erroneous, contrary to the great weight of the evidence. And your evidence of what you're stating for is just the fact that my clients were going faster. But again, it was the burden of the defendant to show that they change lanes safely. And in the testimony that the plaintiffs that arrived, they had no, they had no warning. It happened out of nowhere. They didn't have a chance to even do anything. The point is, is that it's the burden of the defendants to argue that. And that's what they didn't do. They didn't have any testimony or evidence to show that. But it goes into that section of going into the prejudicial nature of the expert. Actually, you did pretty well in this case, given all of these facts. I mean, you got a verdict. Given all these facts, Your Honor, you're right. But imagine if it was actually a fair trial for my clients of what they did deserve. Because the prejudicial nature... I ought to walk away and be glad you got what you got. Well, if you saw the injuries that my client endured, Your Honors, I mean... I thought the injuries, I thought they were minimal. I didn't see the... What were the egregious injuries? So one plaintiff had two surgeries, and the other one had one surgery. Wasn't there some evidence that was caused by other accidents? There actually was no evidence that it was caused by other accidents. What their expert of the defendants stated was, is that he didn't believe that the surgeries were needed. There was no testimony to show that there was, it was not needed in any way. He just said, I wouldn't have done the surgery. There was herniated cases on this. I must be the other one. Yes, Your Honor. The defendant's expert comes in, and that's normal. They say that, hey, this wasn't caused for it, or this wasn't there. But going by the testimony of it, we go by the jury verdict, and this is why I think the post-trial relief is internally inconsistent. They did give future medicals, and they did give disability. But what they failed to give was past medical expenses, and they failed to give pain and suffering, loss of enjoyment, and mental anguish. Right there, because we sit in this courtroom under diversity, we apply the state law, and there it reverses that to give mandated to a new trial regarding this, because it's internally inconsistent. They agreed that these plaintiffs were injured. They just were confused, and I truly believe it was prejudiced by what was going on. But looking at the District Court judge's court is not to inject language to infer as to what the jury should have, could have, would have ever thought of. That's not what it's pointing. Right there, that is reversible error. There was no bad faith. There was no evidence to give the bad faith. In fact, defendants had an expert to talk about medical specials, and because the burden wasn't satisfied, they decided not to bring in the judge injected bad faith in a jury instruction. That is also correct. Yes, Judge Graves. She did not give any type of instruction about what bad faith was, but going by her reasonings into deny, I'm asking whether or not she did not by way of a jury instruction. She did not give a jury instruction of bad faith, nor you say she injected it. How? How did she do that? In her reasonings to denying my for a new trial motion for a new trial, one of the reasons she has stated was or amending the post trial relief was that maybe the jurors injected. She injected language that maybe the jurors felt that there was some bad faith and there were payment schemes and words that was never brought about except for the prejudicial nature of Faye talking about something without showing that connection of evidence. And that leads me to I have one minute left, so I'd like to address that. I think that one of the biggest issues in this case was the president of Faye being a so called expert. This is an insurance adjuster who has never been a red flags expert, which red flags in his testimony in the past is synonymous to fraud. So we go to the point of is it red flags? If it's fraud, we definitely have to have the heightened 90 standard. But he goes and bases. Everything wraps it up into irrelevant, prejudicial, invisible hearsay and says, Here is my testimony, and this is what I say, and it is so. That is not what Joe Bear is about. Joe Bears not to have that type of standard and to set this precedent would be mind blowing to show that under 702 you do not need to show no known rate of error, no peer review articles, no methodology. He didn't have any. That is a huge concern, and all the jurors heard was inadmissible evidence. Do you want to quickly address the rule 50 issue on your damages argument? Yes, Your Honor, and I see my time is up. So thank you. I'll be very quick. I addressed everything in my brief of 50 and 59 timely. I know that defendants that said that I didn't brief it, um, thoroughly. Unfortunately, I am limited in pages and everything, but I was very clear to say that it was for a J. No. V. Much for new trial. I mentioned every single thing you could imagine as much as I could possibly because we were dealing with a plethora of issues in this case, Your Honor. So I believe that everything was timely. I was very thorough in that. And given the minutes exception to have the connection, both the trial to court, the district court judge and the defendants were alerted us to the issues at hand. Okay, thank you. You've reserved time for rebuttal. Yeah. All right, Mr Wells. Good morning, Your Honor's Morgan Wells for the Apple Ease, Mark Engel and John Benton D. B. A. Q. N. L. Motors. Uh, really, it's in our view, it's a fairly simple appeal because it's a matter of, uh, was the verdict within the jury's discretion? And absolutely, there was an abundance of evidence that supported the jury's verdict, both in terms of comparative fault and the damages that were awarded. But there's some of this evidence that, um, there's a very good argument. It shouldn't have been admitted. So it's one thing to say, Well, the evidence supports it. It's another thing to say, Well, we shouldn't have that evidence. So please address that. I take it that you're referring to Mr Faye's testimony. Well, it's Mr Faye's testimony. Well, I guess that it should have been admitted as opposed to should not have been admitted on the guilty plea. Well, that was just that was a citation. I think you're referring to your honor that that, um, Judge Brown excluded the citation because there has to be written evidence of written admission of guilt, which there wasn't. All he did was pay an online fine and then move on with it, just like most people do when they receive a, um, a expense for them to pay it, move on than to lose time of the job and have to come fight the fight the ticket. Some evidence that it was well documented would satisfy the requirement of Louisiana law. What was the only evidence that was submitted was an online receipt from New Orleans Municipal Court that it was paid. That was the only evidence there was never a judgment or any judicial confession whatsoever of guilt. It was just a citation and then the payment of it. That's all there was. There was no written evidence of guilt. Um, and I think, uh, that the evidence that the specific evidence that supported the comparative fault issue, we strongly argued that there was a staged accident, the court. And then we presented as part of that Mr Face testimony. Uh, the jury found otherwise, and they found that there was 50 50 comparative fault. I put in my tabs that the specific testimony that supported the allocation of fault, at least on a 50% basis to Mr Collins was Dr Barada, who testified that at the time of impact, Collins vehicle was traveling faster than the 18 wheeler. And he based that and I put that in my tab. It's tab, um, 24, which is a photo. And there were other photos that were admitted to evidence as well. But there was a photo that showed the impact on the Collins vehicle that the damage was the distortion of the left front bumper was from front to back, indicating that he hit someone that was going at a lesser speed or perhaps even stationary. Our driver testified he had no idea an accident occurred. He was flagged down by another driver way past where the accident purportedly occurred. Uh, and he didn't even know that an accident occurred. But when you look at the damage, the damage was front to back, as opposed to if if an 18 wheeler is moving over on somebody, the damage would be inward or if they're passing him pulled forward the photographs. And this is a still photo of my tab 24, which was, um, one of our exhibits at trial. Uh, I don't have the exhibit in front of me, but it was a still photo from the body cam video of the investigating officer that showed the distortion from front to back, indicating that angles vehicles going faster than plaintiffs than the angle 18 wheeler at the time of the accident. That was the evidentiary basis for finding of comparative fault on the part of Mr Collins. The issue relative to Mr Mr Fay. I mean, he testified about the fact that there's just like all these multitude of other staged accidents of which many people have now pled guilty of staging accidents on the same stretch of highway in New Orleans. Same factual scenario. I'm sorry, I gotta which I 10 in New Orleans East, uh, near 5 10 that stretch of highway. And for some reason, the N. O. P. M. There's no Louisiana State Police jurisdiction, but N. O. P. D. Jurisdiction. I don't know if that's coincidental. I have no idea. That's speculation. But there's commonality of the facts that there are multitude of accidents with the same fact pattern. That was a basis for Mr Fay's testimony. So what is the difference in your view? Because I'm finding this. I thought I understood the difference between staging and intentional. What is your view of what the difference is? Well, it could be a distinction without a difference. There was no staging between angle and staging means you've worked with. Well, the two of us will get together and fake an accident, and then we'll both collect a bunch of money from insurance companies. I'm quoting. I would never do that. Okay, well, well, I think you got it right, except for the fact that angles not involved in that. And this is what? So then how could this be a stage accident? Because you have you have if you and this is out of out of the record, certainly, but this except to the extent that Mr Fay discussed this in similar situations where you have, uh, a slammer, you have a slammer who actually drives a vehicle into an 18 wheeler. He gets out. He gets in another vehicle. The plaintiff gets in the car. The slammer is the one who flags down the 18 wheeler. This is the common fact scenario in every one of these staged accident cases. There have been multitude of people that have pled guilty to staging. You're saying someone else hit them and then claims that this guy hit, right? And then he and he gets in the and he gets in the driver's seat, drives along the flag or the stager guy. This is the same fact scenario in all these other cases flags down the 18 wheeler who has no idea he's involved in an accident. He pulls over and then the plaintiff show up. That's exactly what happened here. The plaintiff show up. But all of those obviously the jury didn't buy that because they found angle was 50% at fault for changing lanes. He said he changed his immunity, changed lanes because he was getting off at I 5 10. He didn't see the plaintiff had no idea where they came from. Dr Barada testified that based on the damage that Collins vehicle was going faster. And that's how you have the distorted damage from front to back. So there's clearly evidence to support the jury finding on fault is staging not fraud. Well, because fraud is under Louisiana law. Well, it's because of the terminology of the law in Louisiana, you have to rely on somebody else's activities in order to, uh, to be burdened yourself. The legal definition of fraud in Louisiana didn't fit this fact pattern. So the word fraud could not be used, but intentionally causing or staging could because it's an affirmative defense. And so really, all of that. Sorry, if you claim that Mr X caused the dam the accident, but Mr X wasn't even involved in the accident. Why isn't that fraud? You lie. You relies on you rely on the lie. The guy is damaged thereby. I mean, all of that long speech. Why isn't it that? Well, that was because it didn't fit the court held that it didn't fit the definition of fraud in Louisiana. Therefore, we could not plead that as an affirmative definition of fraud. Tell me again what you just said. It's I'm paraphrasing. It's you have to detrimentally rely on somebody else's actions in order to be, uh, to incur expenses or losses yourself. Well, Mr Engel didn't detrimentally rely on their actions in incurring a loss. So the legal definition, I'm paraphrasing and going through my recollection of what it was because it really wasn't part of the trial. Um, but but the defense of fraud wasn't allowed to be asserted here. But the affirmative defense of intentionally causing the accident or staging the accident by the plaintiffs, meaning they set this up in advance and caused the accident stage. The accident intentionally caused the accident and damages as a result. So it was that it was because of the definition of fraud under Louisiana law that was not applicable to this case that we couldn't plead it. But in some sense, it could be a distinction without a difference because the effect is the same. Somebody is intentionally causing an accident to defraud an 18 Wheeler company and their insurance company out of money from staging these accidents. And this is the same fact pattern in multitude of cases easier to allege intentional instead of staging because it relieves the defendant of certain burdens of proof. Well, and we pled that as well, Your Honor. And certainly the jury, that was their conclusion that there was, well, that there was comparative fault. So, you know, I think a component of the comparative fault issue is that he sped up and intentionally caused the accident. And I can only conclude that they, because Engle was changing lanes and Engle and Collins sped up or was speeding and instead of slowing down or moving over, which the evidence of the vehicle contradicts that action on the part of Collins, but it does support that he sped up into the 18 Wheeler. But if you had pled and argued only intentional, intentional conduct, then you would not have had the testimony of the red flags. I guess that's true. Um, because that was a basic. So that was the that was the expert that supported our argument that it was intentionally caused or that it was staged because of the multitude of similarities between all these other actions and the multitude of phone calls. We've got all the phone records, multitude of phone calls among all these individuals involved in all these other similar accidents, including one gentleman who was apparently on the verge of admitting guilt and speaking with the FBI, who was murdered. He was one of the individuals who was on a multitude of phone calls with the plaintiffs, and I was presented as evidence at the trial of the case. That was the basis for argument there. The jury found otherwise. So really, Lewis Fay's, um, testimony becomes immaterial or even perhaps even irrelevant relative to the jury's verdict because they found comparative fault. Um, and then any other questions on those issues? On the on the damages issues? Certainly there was. I think, Judge Haynes, you were absolutely correct. This is a case where there were multitude of other accidents and injuries. Um, except they didn't tell their treating physicians about it. Um, they were seen by. You can look at the body cam video. She said that's not true. Well, that I thought maybe I was misremembering. No, this is this is a case where, um, both Mr Collins and Mr Polk, and I've got that as part of my tabs here. Uh, when I took their depositions, have you ever been involved in any other actions? You ever had any neck or back injuries? No, no, no. Ever been treated for neck or back injuries? No, no, no. Well, we get the involved in two separate accidents involving vehicles changing lanes treated for neck and back pain to prior accidents. He didn't tell Dr LeBlanc. He didn't tell any of the physicians about the prior accidents. So that's a basis for finding that they incurred medical expense. How long were they? How long with the time span between the accident here and the previous accidents he had? One was 2014. Another was 2015. He was still being treated in 2016. Our accident was 2017. That was for Mr Collins. Mr Polk. You ever have any prior neck injury? Any prior accidents? No, no, no. Any treatment? No. Well, he had prior accidents and medical treatment and a referral to a neurosurgeon one year before our accident for a herniated disc at C 34. And then he admitted that a trial, but he impeached him at trial because he denied all of that in his deposition. And that was the level at which he had prior. So maybe that was the word that your opponent was focusing on. Some of the accidents were after. Yes, they both had. They both had prior and subsequent. Okay. And one of which was in January, January of 2018, four months after our accident in which they both were involved again in another accident. But they didn't tell their treating physicians that Polk had three prior car accidents and was previously treated in columns, had two prior car accidents and then at least one subsequent. They both had a subsequent one. And so did Polk. Okay. Okay. Four subsequent accidents. Okay. Collins had one in January. What was your opponent's point that I'm misunderstood because she said there wasn't any evidence of other cause. Everything in my tabs are ever. I got all the medical records. They were all presented at trial. I mean, that's what I thought. That's why I was when she said that I thought, Oh, my gosh, I must have been thinking about a different case. No, I there was definitely evidence, and that would support the lack of past damages, but the presence of future damages. Yes, right. So what they what they awarded was future medical expenses based on a soft tissue injury are in Dr Robert, who was our independent physician. He was the only physician in the case that looked at all the prior medical records and all the subsequent radical records, including comparing diagnostic studies, the films of the diagnostic studies of Mr Polk from before and after the accident said there was absolutely no change on the diagnostic studies. And so he said, and he also looked at the post accident diagnostic studies of Mr Collins and said, I don't see anything indicative of trauma. There's no pathological change. There's nothing that would in any way warrant surgery. If they tell me that they were injured or had pain after the accident, my conclusion is that it must have been soft tissue in nature. And then our life care plan, voc rehab expert is a life care planner, said that if they if you assume or conclude that there were soft tissue injuries, then this is the amount of medical treatment that would be required in the future to treat a soft tissue injury. And the jury awarded exactly the number that he provided. And so they clearly believe that. Absolutely. That's acceptable. And then, yes, exactly. And so then they awarded general damages, which was within their discretion. Um, and it's not internally inconsistent. I think the case law that council plaintiffs cited and the appellate brief involved cases where awards were made for medical expenses, but no general damages. We don't have that here. We have future medical expenses awarded and general damages awarded, so it's not internally inconsistent. So it's supported by the fraudulent evidence or improper evidence and improper denial of evidence. The jury ended up finding for the plaintiff, uh, plaintiffs what was proper. That's correct. And, you know, awarded them proper damages. I don't think the wife that went to the hospital isn't in here anymore, so we don't have to address that issue. That's correct. Kind of hard to say that was a fake accident. If she went to the hospital, well, well, Officer Cooley long has body cam video. He shows up and the plaintiffs are there. Mr Collins and Mr Polk and our drivers there. But, uh, Miss Kelly is no longer there. So it was very peculiar that an ambulance showed up, brought her to the hospital purportedly because she was pregnant at the time. And that all happened before the investigating officer 911 called. He shows up before the investigating officer shows up. She's already taken to the hospital. Just another peculiarity in the case. But she's not an issue in the case. That's just, well, you want to get to the hospital fast if you need to go. I'm sorry. But how does it? How does it? Typically you have the police show up and then an ambulance. This is an ambulance comes, loads her up and leaves before he even gets there. I'm not sure that's the first time and it may not be given all the other facts and circumstances. No, she's not in this case. That's correct. She's not an issue anymore. Um, and then, but I don't think that that the testimony provided by Mr Fay, just to touch on that point, your honor was improper. I mean, he was qualified as an expert and he testified about all the indicators of of a red flag. Uh, he's been in the insurance business and industry and has investigated fraud claims for a number of years and he was properly vetted. Uh, Dobbert motions were filed and the court allowed him to testify. But then again, it's irrelevant or immaterial, I guess at this point, because the jury did not conclude that it was a staged accident. And so all of the, it's getting back to my original comment. I think it's a fairly simple appeal because the salient question is, was the verdict  presented at trial that supports the verdict? Well, she's debating the evidence. So, you know, yeah. Okay. Any of it. That's uh, I don't know if there was any other comment. There's no law that requires you to speak the entire 20 minutes if you don't wish to. Yeah, I just wanted to make sure that Oh, on the, on the, on the rule 50 motion. Um, Ms Mota did not ask for judgment as a matter of law. Uh, at the close of her case on the past medical expenses, they will force. He was precluded from seeking a J. N. O. V. On that issue. Okay. Thank you, Your Honor. Thank you. Okay. Ms Mota, you have time for rebuttal, but you've got to tell me why you lied about the past accidents. No, I think no, there was no lie. I think there's a misunderstanding where I was trying to say was is that they was the injuries that they had in this case were not from prior stuff. There's no past evidence to show that they had past. Okay, that's a lot. But I was asking about the fact that they had past accidents and you said there weren't any. I was thinking, am I forgetting that? I mean, that was a no, no, no, no, no, no. There was past accidents. Okay. So the point is, though, that past accidents can be the reason that you're having the surgery. Now you can get an accident. You can. I don't want to get surgery. I don't get surgery. The two years later you do. So it's not. It's not irrelevant. How can you say it's irrelevant that they had prior accidents and post accidents before your trial? Very good point, Your Honor. And it wasn't that it's totally misrepresent to me. No, no, no, Judge. And my sincere apologies on the misunderstanding. It wasn't that it was irrelevant. It was that there was no testimony to show that they had prior MRIs to show that they were recommended for these surgeries. And the plaintiffs did talk about priors. In fact, we actually Mr Polk did talk that he did have a prior MRI to show it and then he stopped treating and that was all put into evidence into that. The issue with Mr Polk specifically was he was very hard to remember dates. He could tell you in a depo all the accidents he had been in, but it was dates of him to not be able to characterize perfectly. When this collision occurred, and speaking like of the subsequent collision in January of 2018, Mr Polk already had his surgery. Immediately after that subsequent collision, he called his surgeon freaking out because his neck wasn't so much pain because he had just had surgery. So for defendants to say that they didn't tell their treating physicians of a subsequent collision is absolutely incorrect because of that, that he just had his surgery. But furthermore, with Mr Collins, there are tests that are done called Disco Graham, and that is to specifically pinpoint the area of issue of an MRI in an MRI to show the pain where it was. This had never been done before by Mr Collins. Having prior soft tissue injury and then going back to a normal life and being asymptomatic is what occurred in this in this nature. But when we talk about the verdict here, it's not about whether it was surgical or not surgical. It was they said that it caused the injuries. And causing the injuries and giving money for future medical expenses is internally inconsistent with the past medical expenses. That is where the internally inconsistent lies. It's not whether there was such a credibility that was done for the trial here. It has to be where did they get future medical expenses for this case? Yes, they did. Which means we have to go by the state law and says internally that's inconsistent to follow and go into there. But I want to address the guilty police citation, which I only have about 10 seconds. It wasn't just about the guilty police citation. There were mandatory federal motor carrier safety regulations that he was supposed to do post drug. We're well aware of that. My time is okay. Well, I appreciate that. And um, thank you both. And that case is under submission and we are concluded for this panel is concluded for today's oral arguments. Thank you very much.